IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MONIQUE L. WILKERSON,          )
                               )
         Plaintiff,            )
                               )   CIVIL ACTION
v.                             )
                               )   No. 12-2779-KHV
KELLOGG COMPANY, et al.,       )
                               )
         Defendants.           )
                               )
_____)

## MEMORANDUM AND ORDER

Monique L. Wilkerson brings claims against her former employer, Kellogg Company; Kellogg Human Resources Manager, David Fiftal; and Kellogg Line Supervisor, Bill Ellifrits. Plaintiff alleges that defendants violated Title VII, 42 U.S.C § 2000e et seq. and the Kansas Act Against Discrimination ("KAAD"), K.S.A. § 44-1001 et seq. Specifically, plaintiff alleges that defendants discriminated against her based on sex, created a sexually hostile work environment, retaliated against her for engaging in protected activity and constructively discharged her. Finally, plaintiff brings state law claims against defendants for emotional distress. This matter comes before the Court on Defendants' Motion For Summary Judgment (Doc. #40) filed October 9, 2013. For reasons set forth below, the Court finds that defendants' motion should be sustained.

### Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735,

740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which she carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). To carry her burden, the nonmoving party may not rest on her pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. In response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

**Facts**

The following facts are either uncontroverted, deemed admitted or construed in the light most favorable to plaintiff, the nonmovant.[1]

Kellogg owns and operates the Kansas City Bakery in Kansas City, Kansas which produces snack foods, including Cheez-It crackers. On October 7, 2004, Kellogg hired defendant to work in the Kansas City Bakery.[2]

In 2006 or 2007, plaintiff complained to Kellogg that a co-worker, Calvin Pierce, had sexually harassed her. In particular, she complained that Pierce (1) licked his lips at her perhaps five times, (2) picked her up from behind once, (3) touched her forearm once for about a second and (4) once told her, "I'm going to always feel on you." See Doc. #41-2 at 25-27. Kellogg investigated her complaint and disciplined Pierce.[3] Fiftal Decl. ¶ 31.

---

[1] Pursuant to D. Kan. Rule 56.1, "material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." D. Kan. R. 56.1(a); see also id. 56.1(b). Here, plaintiff has not controverted most of defendants' statement of facts. Further, in response to defendants' motion for summary judgment, plaintiff relies in part on exhibits which are not sworn or verified. Under D. Kan. Rule 56.1(d), "[a]ll facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions." Under Rule 56(e), Fed. R. Civ. P., if a party fails to properly support an assertion of fact, the Court may, inter alia, give the party "an opportunity to properly support or address the fact" or "issue any other appropriate order." Fed. R. Civ. P. 56(e). Here, the unverified facts do not materially affect the Court's outcome, so the Court need not decide whether to give plaintiff an opportunity to properly support her exhibits.

[2] Pursuant to a collective bargaining agreement, Kellogg posted permanent vacancies for three working days during which time all employees could sign for the vacancy. Kellogg awarded all permanent vacancies on the basis of plant-wide seniority and ability to perform the work. During her tenure with Kellogg, plaintiff received every job she bid on, including a forklift job and oven operator position.

[3] Kellogg has a written "Discrimination/Harassment Policy" which prohibits gender harassment and discrimination. Doc. #41-2 at 62. The Discrimination/Harassment Policy requires
(continued...)

In November of 2011, plaintiff complained to Kellogg that in 2010 or early 2011, shift supervisor Bill Ellifrits once told her, "You're going to love me;" once grabbed her hands briefly; and once tried to touch her behind as he sped by on an electric scooter.[4] Doc. #41-2 at 36-39. Kellogg suspended Ellifrits pending an investigation. During the investigation, Ellifrits admitted to grabbing plaintiff's hands on one occasion, but stated that he only did so to get her attention and that he did not grab her hands in a sexual or romantic gesture. In a meeting with Kellogg officials, Ellifrits agreed to refrain from using words that could be interpreted as romantic.

After plaintiff complained about Ellifrits' behavior, she reported primarily to John Shipley as her new supervisor. See Shipley Decl. ¶ 4-5. Shipley did not know about plaintiff's complaints of sexual harassment by Pierce or Ellifrits until March of 2012, when plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC").

While plaintiff was at work on February 10, 2012, she believed that she was having a heart attack. Plaintiff did not report to work from February 13 through March 4, 2012. Plaintiff submitted applications for leave under the Family And Medical Leave Act and short-term disability leave ("STD) to CIGNA, Kellogg's disability insurance carrier. CIGNA denied plaintiff's request for

---

[3](...continued)
employees to report perceived harassment or discrimination "as soon as possible, preferably within ten (10) days of the behavior," explaining that any employee who believes that he or she has been subjected to harassment and/or discrimination has the "responsibility" to report such behavior. Id. The Discrimination/Harassment Policy provides various avenues for initiating complaints, including contacting management, Human Resources, Employee Relation or Ethics & Compliance. The policy also prohibits retaliation against employees making such reports. Id. Kellogg discusses and distributes the Discrimination/Harassment Policy to employees during orientation. Kellogg also posts its Discrimination/Harassment Policy on a bulletin board outside the dressing area at the Bakery.

[4] Although plaintiff states that Ellifrits was trying to touch her rear end, she did not see him; her back was to him as he sped by.

4

FMLA leave from February 13 through March 4, 2012 because she did not return the Certification of Health Care Provider for Employee's Serious Health Condition. CIGNA also denied plaintiff's request for STD from February 13 through March 4, 2012 because plaintiff's doctor indicated that she had taken time off of work on her own and not at a doctor's direction.[5] Doc. #41-3 at 75.

On March 5, 2012 plaintiff returned to work as oven operator on Line 206. Doc. #41-3 at 75. Plaintiff was responsible for baking the product, maintaining oil temperature and testing for product quality. Plaintiff also was responsible to attend to her oven at all times during her shift unless another qualified employee relieved her.[6] Kellogg rules provided that plaintiff could only leave the oven if the relief person was standing next to her. Plaintiff testified, however, that the practice was to relieve employees by hand signals without a relief person standing right there by her.

During plaintiff's shift on March 5, 2012, the Line 206 oven caught on fire at approximately 2:15 a.m. Plaintiff was not at her work station at that time. Kellogg employees worked for several hours to extinguish the fire and clean up.

Later that morning, plaintiff met with Shipley and Larry Smith, a union steward. Plaintiff said that Herbert Bilberry, a relief operator, had "waved her to break" when he was halfway up the oven aisle, which is 400 feet long. Under Kellogg rules, a supervisor or relief operator had to be close by an employee – not waving from 200 feet away – to relieve him or her for a break.

On March 6, 2012, plaintiff and Victor Zamora, a union steward, met with Shipley, who told

---

[5] When she returned to work, plaintiff had not provided documentation from her treating doctor to show that she was restricted from working from February 13 through March 4, 2012. Kellogg again asked plaintiff to submit such documentation on March 6, 2012. Plaintiff's self-diagnosis of a heart attack was never confirmed.

[6] A relief operator operates a variety of production equipment while regular machine operators are on break or out on vacation or leave. Each relief operator is responsible for relieving six employees plus himself or herself.

5

plaintiff that she was suspended pending an investigation of the fire. Under Bakery rules, "unauthorized absence from work area" is a violation which can result in indefinite suspension pending investigation that may result in discharge.[7]

During the investigation, Bilberry admitted waving to plaintiff, but stated that plaintiff left her work station before he stood next to her. Plaintiff believes that Bilberry relieved her within a six foot proximity. According to Bilberry, however, he arrived at the oven operator station approximately five to eight minutes after he waved to plaintiff.[8] After conducting its investigation, Kellogg concluded that plaintiff had left her line without being properly relieved for break.

On March 8, 2012, plaintiff dual-filed a charge of discrimination with the EEOC and the Kansas Human Rights Commission ("KHRC") claiming that Kellogg had suspended her in retaliation for complaining about sexual harassment. Doc. #41-2 at 65. (Charge No. 563-2012-00820). She marked only the box for "Discrimination Based On Retaliation," and then provided the following particulars:

> I have been employed by the above named employer since October 7, 2004. In November 2011, I complained to the employer that a supervisor sexually harassed me. Since that time the third shift supervisor has continuously paged me while I am on break and after the end of my shift to make it appear as though I am unresponsive. On or about March 5, 2012, I was relieved for break by a coworker at approximately 2:00 a.m. until 2:30 a.m. At approximately 2:18 a.m., there was a fire on the line. When I became aware of the fire, I returned to the line. On March 6, 2012, I was the

---

[7] Kellogg Snacks House Rules, Group B, prohibit "unauthorized absence from work area," but do not define it. Doc. #41-3 at 69. The Rules provide for progressive discipline for violation of a Group B rule, including but not limited to "verbal warnings, written warnings, and/or suspensions. Sever [sic] violations could result in indefinite suspension pending investigation that may result in discharge." Doc. #41-3 at 70.

[8] Plaintiff testified that she does not know what Bilberry told Kellogg about the incident and therefore does not know why the Company eventually concluded that she had left the line without being relieved for break.

only person suspended indefinitely for the fire for which I was not present. The
employer has acknowledged that I was on break and not present for the fire for which
I was held responsible. I believe I have been retaliated against based on my internal
complaint of sexual harassment in violation of Title VII of the Civil Rights Act of
1954 as amended.

Doc. #41-2 at 65.

Plaintiff returned to work on March 13, 2012 and met with Fiftal and union president Jermaine Fields to discuss the investigation results. Regarding the five days she missed, Fiftal told plaintiff that three days constituted the suspension pending the investigation and that she would be paid for the additional two days of missed work since the investigation took longer than expected. Fiftal also talked with Fields and plaintiff about her EEOC charge. Fiftal and Fields agreed that Kellogg would reduce plaintiff's suspension if she withdrew her EEOC charge. Plaintiff testified that Fiftal yelled and screamed at her in front of other employees.[9] She testified that Fields pressured her to drop her charge.

On or about March 14, 2012, plaintiff amended her EEOC charge to add the following paragraph:

On Tuesday, March 13, the Human Resources Manager yelled and screamed at me
in the hallway in reference to my charge of discrimination and has otherwise
intimidated me so that I will drop the charge. He rejected my doctor's release to
return to work that was previously accepted and threatened my employment in further
retaliation and in violation of Title VII of the Civil Rights Act of 1964 as amended.

Doc. #41-2 at 66.

On March 20, 2012, Kellogg sent a letter to plaintiff asking her to provide documentation from her doctor to support her absence from February 13 through March 4, 2012. On March 26,

---

[9] Plaintiff wanted to call her husband to come to the meeting, and became angry when Fiftal did not allow her to do so.

2012, CIGNA denied plaintiff's request for FMLA leave because she had not provided documentation from her treating doctor validating her absence.

On March 26, 2012, plaintiff filed a complaint with the KHRC claiming that Kellogg had suspended her in retaliation for her sexual harassment complaint. Doc. #41-3 at 90. On March 30, 2012, plaintiff amended her KHRC complaint to add an allegation that Fiftal had retaliated against her for filing her administrative complaint. Id. at 91.

Plaintiff took leave of absence from March 27 through April 17, 2012 and received STD for low back pain. Plaintiff never returned to work. Plaintiff did not return to work because she thought she was "out of units" under Kellogg's attendance policy. Under the Bakery's Absence Control Program, an employee received 100 units of time off work, outside of holidays and vacations, for undocumented absences. One unit was subtracted for each whole or partial hour of missed work. Under the program, Kellogg terminated employees when they reached zero units. FMLA leave and personal leave were not assessed units under the Absence Control Program. Plaintiff does not know whether she actually ran out of units. Kellogg never told plaintiff verbally or in writing that she was terminated from her position at Kellogg.

Plaintiff testified that Ellifrits' harassment affected her ability to perform her job and caused her to have physical symptoms of anxiety including heart palpitations. It also caused her stress within her family, depression and loss of sleep. In 2012, a psychiatrist treated her for depression and anxiety.

On September 26, 2012, the EEOC issued its dismissal and notice of rights with respect to plaintiff's charge of discrimination filed on March 8, 2012. Plaintiff filed this lawsuit on December 12, 2012, before the KHRC concluded its investigation. The KHRC therefore closed its file without

issuing a dismissal and notice of rights.

**ANALYSIS**

Defendants Fiftal and Ellifrits assert that they are entitled to summary judgment because (1) Title VII and the KAAD do not provide for individual liability and (2) plaintiff has not set forth evidence to support each element of her claim for emotional distress. Kellogg asserts that it is entitled to summary judgment on plaintiff's Title VII and KAAD claims of sex discrimination, sexual harassment and retaliation because (1) she failed to exhaust administrative remedies and (2) she has failed to set forth evidence to support a prima facie case as to any claim. Kellogg asserts that it is entitled to summary judgment on plaintiff's state law claim for emotional distress because she has not set forth evidence to support each element of her claim.

In their summary judgment brief, defendants set out a thorough analysis of the facts and law and persuasively argue that they are entitled to summary judgment on each claim. See Memorandum In Support Of Defendants' Motion For Summary Judgment (Doc. #41) filed October 19, 2013. Plaintiff's response utterly fails to identify issues of disputed fact or articulate legal argument to support her Title VII and KAAD claims of sex discrimination, retaliation and constructive discharge, her KAAD claim of sexual harassment or her state law claims for emotional distress. Plaintiff offers no factual or legal argument or authority in support of these claims, and she therefore appears to have abandoned them. See Jones v. Rent-A-Center, Inc., 240 F. Supp.2d 1167, 1175 (2002) (plaintiff abandoned retaliation claims where she offered no legal argument or authority to support claims); accord Ratts v. Bd. of Cnty Comm'rs, 141 F. Supp.2d 1289, 1314 (D. Kan. 2001) (plaintiff abandoned claim under 42 U.S.C. § 1983 by failing to respond adequately to defendant's motion for summary judgment); Edwards & Assocs., Inc. v. Black & Veatch, L.L.P., 84 F. Supp.2d 1182, 1197

(D. Kan. 2000) (fraud claim abandoned under similar circumstances). Even so, the Court has carefully reviewed the applicable legal standards and the record in this case. See Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002) (party's failure to file response to summary judgment motion not sufficient basis on which to enter judgment). For substantially the reasons set forth in defendants' briefs, the Court finds that defendants are entitled to summary judgment on plaintiffs' Title VII and KAAD claims of sex discrimination, retaliation and constructive discharge, her KAAD claim of sexual harassment and her state law claims for emotional distress. See id. (summary judgment appropriate if moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law).

Plaintiffs' remaining claim is for Title VII sexual harassment as to all defendants. As noted, defendants assert that they are entitled to summary judgment on this claim because plaintiff failed to exhaust administrative remedies and in the alternative, fails to set out a prima facie case.

Under Title VII, a charge of discrimination with the EEOC or designated state agency is a jurisdictional prerequisite to suit based on a claim of employment discrimination. See Apsley v. Boeing Co., 691 F.3d 1184, 1210 (10th Cir. 2012); Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324-26; Alcivar v. Wynne, 268 F. App'x. 749, 753 (10th Cir. 2008) (citing Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005)). Without such a filing, federal courts lack subject matter jurisdiction to entertain discrimination claims under these statutes. See Carmody v. SCI Colo. Funeral Servs., Inc., 76 F. Supp.2d 1101, 1103-1104 (D. Colo. 1999). Because exhaustion of administrative remedies is a prerequisite to subject matter jurisdiction, plaintiff bears the burden of showing exhaustion by competent evidence. McBride v. CITGO Petroleum Corp., 281 F.3d 1099, 1106 (10th Cir. 2002).

To exhaust administrative remedies, plaintiff generally must present her claim to the EEOC or authorized state agency and receive a right to sue letter based on that charge. The charge "shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. At a minimum, it must identify the parties and "describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). The charge tells the EEOC or KHRC what to investigate, provides an opportunity to conciliate the claim and gives the charged party notice of the alleged violation. Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003).

A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination. MacKenzie v. City & Cnty. of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005). In determining whether plaintiff has exhausted administrative remedies as to a particular claim, courts liberally construe administrative charges. Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007); Mitchell v. City & Cnty. of Denver, 112 F. App'x. 662, 667 (10th Cir. 2005) (more lenient pleading standard acknowledges that administrative charges of unlawful employment practices are regularly filled out by employees without counsel). The charge, however, must contain facts concerning the discriminatory actions underlying each claim. Jones, 502 F.3d at 1186. Each discrete incident of alleged discrimination or retaliation constitutes an "unlawful employment practice" for which plaintiff must exhaust. Id.

Plaintiff's failure to check the appropriate box on the administrative charge form for the type of discrimination alleged creates a presumption that she is not asserting claims represented by boxes not checked. See Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1260 (10th Cir. 1998). This presumption is not dispositive and may be rebutted by the text of the claim in the narrative section of the charge form. See id. (citing Kristufek v. Hussmann Foodservice Co., 985 F.2d 364, 368 (7th

11

Cir. 1993)). Although sparse, an allegation may be sufficient to satisfy the statutory requirements of exhaustion and fulfill the purposes of notice to the employer and an opportunity to conciliate the claim. See id. (allegation sufficient if it identifies type of discrimination complained of, the alleged harasser and approximate time period).

Kellogg correctly points out that plaintiff did not check the box for harassment. See Gunnell, 12 F.3d at 1260. Further, the narrative of plaintiff's EEOC charges appears to mention her internal harassment complaint only to identify it as the protected activity for which she alleges Kellogg retaliated against her. See Doc. #41-2 at 65, 66.[10] Nothing in the EEOC forms put Kellogg on notice of a claim of sexual harassment. See Apsley v. Boeing Co., 691 F.3d 1184, 1210 (10th Cir. 2012).[11]

---

[10] As noted, plaintiff's EEOC charges asserted as follows:

I have been employed by [Kellogg] since October 7, 2004. In November 2011, I complained to the employer that a supervisor sexually harassed me. Since that time the third shift supervisor has continuously paged me while I am on break and after the end of my shift to make it appear as though I am unresponsive. On or about March 5, 2012, I was relieved for break by a coworker at approximately 2:00 a.m. until 2:30 a.m. At approximately 2:18 a.m., there was a fire on the line. When I became aware of the fire, I returned to the line. On March 6, 2012, I was the only person suspended indefinitely for the fire for which I was not present. The employer has acknowledged that I was on break and not present for the fire for which I was held responsible. I believe I have been retaliated against based on my internal complaint of sexual harassment in violation of Title VII of the Civil Rights Act of 1954 as amended.

See Doc. #41-2 at 65, 66.

[11] Kellogg cites Apsley v. Boeing Co., 691 F.3d 1184, 1210 (10th Cir. 2012), for the general proposition that plaintiff's EEOC charge must put defendants on notice of the claims she seeks to exhaust. Plaintiff asserts that Apsley is not on point because there, the Tenth Circuit upheld summary judgment for failure to exhaust an ERISA claim not raised in a Title VII charge for age discrimination. See Doc. #44, citing Apsley, 691 F.3d at 1193. Defendants, however, rely on Apsley for the proposition that the district court properly granted summary judgment on plaintiffs' Title VII and ADA retaliation claims for failure to exhaust. Apsley, 691 F.3d at 1210. Specifically, the Tenth
(continued...)

12

(charge must put defendant on notice of claims; although plaintiff checked box for retaliation, narrative did not give notice that plaintiff claimed retaliation relating to gender, race or disability). Plaintiff has not exhausted administrative remedies on her Tittle VII claim for sexual harassment, and the Court therefore lacks subject matter jurisdiction over this claim.[12]

**IT IS THEREFORE ORDERED THAT** <u>Defendants' Motion For Summary Judgment</u> (Doc. #40) filed October 9, 2013 be and hereby is **SUSTAINED**.

Dated this 13th day of March, 2014, at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge

---

[11](...continued)
Circuit held that although plaintiffs had checked a box for retaliation on their EEOC charges, "[n]othing in the EEOC forms put the [defendants] on notice of retaliation claims relating to gender, race, or disability." <u>Id.</u> at 1210.

[12] Even if the Court reached the merits of plaintiff's sexual harassment claim, she has not produced evidence that the alleged harassment was sufficiently severe or pervasive to set out a prima facie case of sexual harassment. She points to evidence that in 2006 or 2007, Pierce (1) licked his lips at her; (2) picked her up from behind once; (3) touched her forearm once for about a second and (4) told her, "I'm going to always feel on you." She contends that four years later, in 2010 or early 2011, Ellifrits once (1) tried to touch her behind; (2) grabbed her hands briefly; and (3) said "you're going to love me." Even if true, these incidents are insufficient to state a legally-actionable claim. <u>See, e.g.</u>, <u>Baker v. Via Christi Reg'l Med. Ctr.</u>, 491 F. Supp.2d 1040, 1051 (D. Kan. 2007) (two unrelated instances where coworkers touched plaintiff's buttocks and patient's genitals in plaintiff's presence insufficient to state sexual harassment claim); <u>Hearron v. Vioth Indus. Servs.</u>, No. 10-2422-KHV, 2011 WL 5080261, at *4 (D. Kan. Oct. 24, 2011) (plaintiff's allegations that supervisor was "overly friendly" and flirtatious, "shared his personal business" with her, and once grabbed her arm and patted her on buttocks, stating "you need a spanking and you're gonna like it" not sufficiently severe or pervasive to withstand motion for summary judgment). <u>Cf.</u> <u>Lockard v. Pizza Hut, Inc.</u>, 162 F.3d 1062, 1067 (10th Cir. 1998) (affirming liability for sexual harassment where restaurant manger often played sexually suggestive songs, customers repeatedly made overtly sexual comments to plaintiff, and two male customers sexually assaulted plaintiff after she complained to manager about their behavior).